IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-02444-WYD-KMT

AMERICAN WEB, INC.,

      Plaintiff,

v.

FLOM CORPORATION;
LLOYD S. STIRMER;
PETER O. ABELES; and,
JOHN DOE TRUSTEE(S) of the STIRMER TRUST,

      Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s Third Amended Complaint [ECF No. 62]. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On September 16, 2011, American Web, Inc. ("AmWeb") filed this suit against Flom Corporation ("Flom") seeking a declaratory judgment and constructive trust, and alleging the following claims: (1) breach of contract for underpayment and nonpayment; (2) breach of duty of good faith and fair dealing; (3) conversion; (4) fraud by deceit; and, (5) negligent misrepresentation.

AmWeb is a commercial printing company which, in connection with its business operations, produces wastepaper. Flom provides consulting services to wastepaper producers with regard to their recycling options. Defendant, Peter O. Abeles, is a 50%

owner and Chairman of Flom's Board of Directors.  Defendant, Lloyd S. Stirmer, is

Flom's President.  The John Doe Trustees of the Stirmer Trusts own 46% of Flom.

In 1986, Abeles visited Colorado to discuss the possibility of entering into a

contract with AmWeb regarding wastepaper recycling.  In September 2006, AmWeb

and Flom entered the Wastepaper Supply and Equipment Access Agreement ("the

Wastepaper Agreement") [ECF No. 65-3] in which Flom agreed to purchase all of

AmWeb's marketable wastepaper and pay AmWeb "in accordance with the prevailing

market conditions." ECF No. 65-3, p.1, ¶ 3.  For five years, Flom purchased wastepaper

from AmWeb on a monthly basis.

After selling wastepaper to Flom for five years, AmWeb obtained a commercially

available schedule of rates considered to be the prevailing market prices for wastepaper

that are paid by consuming paper mills.  AmWeb alleges that according to these rates,

Flom has grossly under-compensated AmWeb for its wastepaper purchases dating

back to the beginning of the parties' business relationship.  Following this discovery,

AmWeb ceased its wastepaper shipping operation to Flom in August 2011.  At that time,

Flom allegedly owed AmWeb for twelve shipments made since July 1, 2011.  According

to AmWeb, Flom should have paid AmWeb for these shipments by November 5, 2011.

AmWeb alleges that Flom has not paid for these final twelve shipments.

On September 16, 2011, AmWeb filed this lawsuit against Flom, Stirmer, Abeles,

and the John Doe Trustees of the Stirmer Trust.  AmWeb seeks a declaratory judgment

regarding its rights and obligations under the Wastepaper Agreement and requests this

Court to impose a constructive trust on the funds Flom allegedly withheld from AmWeb

by not paying AmWeb for wastepaper in accordance with prevailing market conditions.

AmWeb also alleges the following claims:  (1) breach of contract for underpayments; (2) breach of contract for nonpayment; (3) breach of duty of good faith and fair dealing; (4) conversion; (5) fraud; and, (6) negligent misrepresentation.  On May 30, 2012, Flom filed an Amended Partial Motion To Dismiss Third Amended Complaint [ECF No. 62], arguing that:  (1) Colorado's Economic Loss Rule ("ELR") bars AmWeb's tort claims; and, (2) this Court lacks personal jurisdiction over Abeles.

## ANALYSIS

### A.  Legal Standard for a Motion to Dismiss Pursuant to FEDERAL RULE of CIVIL PROCEDURE 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complain alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*. 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2007).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (citations omitted). The plaintiff "must 'nudge [][his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Co., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U,S, 544, 570 (2007)). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden "requires more than labels and conclusion, and a formulaic recitation of the elements of the cause of action will not do"). General allegations "encompass[ing] a wide swath of conduct, much of it innocent" will fail to state a claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## B. Personal Jurisdiction

Flom argues that this Court lacks personal jurisdiction over Abeles and the Stirmer Trust.

"To obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted). Thus, a Court must engage in a two prong analysis in which it "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1506-07 (10th Cir. 1995) (internal citations omitted). The United States Court of Appeals for the Tenth Circuit and the Colorado Supreme Court have held that Colorado's long arm statute extends personal jurisdiction to the greatest extent permitted by due process, obviating the need for a statutory long arm analysis independent of the due process inquiry. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (citations and internal

quotation marks omitted) ("The Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  This interpretation obviates the need for [a long-arm] statutory analysis separate from the due process inquiry . . . "); *Dwyer v. Dist. Ct., Sixth Judicial Dist.*, 532 P.2d 725, 726-27 (Colo. 1975) (internal citations and quotation marks omitted) ("[I]n enacting the Colorado Long Arm Statute, our legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.  Therefore, the only question which we must determine is whether exercise of jurisdiction over the petitioner comports with the protection of the due process clause").

The due process analysis includes a two part inquiry:  (1) whether the non-resident defendant has sufficient "minimum contacts" with the forum state; and, (2) if the defendant has sufficient "minimum contacts" with the forum state, whether exercising personal jurisdiction over the non-resident defendant would offend "traditional notions of fair play and substantial justice." *AST Sports Sci.,* Inc., 514 F.3d at 1057.  When determining whether the non-resident defendant has sufficient minimum contacts with the forum state, "we [must] ask whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The "minimum contacts" standard may be met in two ways, through showing the existence of either general jurisdiction or specific jurisdiction. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  "Where a court's exercise of jurisdiction does not arise directly from a defendant's forum-related

activities, the court may nonetheless exercise *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "However, '[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Id.* (internal quotations and citation omitted).  In the absence of continuous and systematic contacts, specific jurisdiction exists over a nonresident defendant when "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings*, 149 F.3d at 1090-91 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks omitted)).

If the Court finds that the nonresident defendant has sufficient minimum contacts with the forum state, "the court must see to it that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Trierweiler*, 90 F.3d at 1532 (quoting *World-Wide Volkswagon*, 444 U.S. at 292).  In determining such, the Court considers the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011) (citing *Dudnikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 1080 (10th Cir. 2008)).  Traditional notions

of fair play and substantial justice are not offended when a "district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *AST Sports Sci., Inc.*, 514 F.3d at 1061 (citation and internal quotation marks omitted).

### 1. Abeles

#### a. General Jurisdiction

AmWeb concedes that Abeles traveled to Colorado once in 1986 on behalf of Flom [ECF No. 65, pp. 14-15] and does not allege that Abeles has been to Colorado more than that one time.  Abeles's single trip to Colorado in 1986 does not constitute continuous and systematic contact with Colorado. *See Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted) ("[T]he continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum").  Thus, my analysis turns to whether this Court may exercise specific jurisdiction over Abeles.

#### b. Specific Jurisdiction

The cornerstone for asserting specific jurisdiction over a non-resident defendant lies in the determination that the plaintiff's cause of action arises out of or relates to the defendant's contact(s) with the forum state.  Based on the facts presented, I find that AmWeb's cause of action does not arise from Abeles's contacts with Colorado.

Abeles traveled to Colorado for the purpose of meeting with AmWeb during 1986 in order to sell Flom's services.  AmWeb suffered no injury and no detriment as a result of Abeles's 1986 trip to Colorado.  AmWeb's cause of action, mainly breach of contract, is not related to Abeles's 1986 trip to Colorado.  AmWeb's cause of action arises out of

- 7 -

the alleged breach of the Wastepaper Agreement that the parties executed in September 2006:  twenty years after Abeles's trip to Colorado.  Abeles declares in his declaration [ECF No. 61-1] that the last time he visited Colorado was over ten years ago, for personal vacation, and he has not had any communication with AmWeb since 1992.  Thus, AmWeb does not allege sufficient facts to establish a *prima facie* case that this Court may exercise specific personal jurisdiction over Abeles. *GCI 1985-1 Ltd. v. Murray Properties Partnership*, 770 F. Supp. 585, 587 (D. Colo. 1991) (citing *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990)) ("To defeat [a] 12(b)(2) motion, [the plaintiff] need only make a prima facie case of personal jurisdiction").  The parties further present argument regarding whether the fiduciary shield doctrine precludes this Court from exercising personal jurisdiction over Abeles.  Because AmWeb's cause of action does not arise out of Abeles's contacts with Colorado, I need not address this argument.

Because Abeles does not have sufficient minimum contacts with Colorado, I need not analyze whether exercising personal jurisdiction over him would offend traditional notions of fair play and substantial justice.  Therefore, for the reasons stated above, Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s Third Amended Complaint [ECF No. 62] is GRANTED to the extent that Flom seeks dismissal of all claims against Abeles for lack of personal jurisdiction.  All claims asserted against Abeles are DISMISSED WITH PREJUDICE.

## 2. The Stirmer Trusts

"Actions regarding trusts must be brought in a proper court having jurisdiction, and a court must have jurisdiction over either the trustee or the trust property in order to

exercise power over the trust." 76 Am. Jur. 2d Trusts § 601.  AmWeb does not fully allege facts surrounding the Stirmer Trust.  However, Stirmer's Declaration [ECF No. 61-2] provides clarity.  Stirmer declares that he is the trustee of two trusts:  (1) the Stirmer Qualified Subchapter S Trust FBO Stacey Stirmer; and, (2) the Stirmer Qualified Subchapter S Trust FBO Lloyd Stirmer. ECF No. 61-2, p. 1, ¶ 1.  Stirmer refers to these two trusts collectively as the Stirmer Trusts. *Id.*

Because Stirmer is the trustee of the trusts, I must look to his contacts with Colorado to determine whether this Court has jurisdiction over the Stirmer Trusts. However, this inquiry is not necessary because the Defendants waived any objection to this Court exercising personal jurisdiction over Stirmer when they filed their Partial Motion to Dismiss Third Amended Complaint [ECF No. 61] and did not raise lack of personal jurisdiction over Stirmer. *United States v. Foster*, 4 Fed. Appx. 605, 607 n.2 (10th Cir. 2001) ("Personal jurisdiction is a waivable defense. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174-75 (10th Cir. 1992).  Any objection a party may have to the court's exercise of personal jurisdiction over it must be asserted in the answer or in a pre-answer motion"); *Travelers Cas. & Sur. Co. of Am. V. Unistar Fin. Serv. Corp.*, 35 Fed. Appx. 787, 789 (10th Cir. 2002) (internal quotations marks omitted) ("In addition, Rule 12(h)(1) specifically states that the defense of lack of personal jurisdiction is waived if omitted from a motion in the circumstances described in [Rule 12(g)]").  Because the Defendants waived any objection to this Court's exercise of personal jurisdiction over Stirmer, I find that this Court has jurisdiction over the Stirmer Trusts. Thus, Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s

Third Amended Complaint [ECF No. 62] is DENIED to the extent that is seeks dismissal of AmWeb's constructive trust claim.

## C.  Colorado's Economic Loss Rule ("ELR")

AmWeb assets three tort claims against Flom:  (1) conversion (Claim 5); (2) fraud by deceit (Claim 6); and, (3) negligent misrepresentation (Claim 7).  Flom argues that Colorado's ELR bars AmWeb's tort claims.[1]

Under Colorado's ELR, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  "[T]he question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty [the] plaintiff claims the defendant owed." *Id.* at 1262.  "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from the risk of physical harm or damage to their personal property." *A.C. Excavating v. Yacht Club II Homeowners Ass'n.*, 114 P.3d 862, 865-66 (Colo. 2005) (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004)).  "[A] duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011); *Haynes Trane Serv. Agency v. Am. Std.*, Inc., 573 F.3d 947, 962 (10th Cir. 2009) (quoting *BRW*, 99

---

[1] Flom states that AmWeb argues that Colorado's ELR does not apply because the Wastepaper Agreement contains a choice of law provision stating that the "Agreement shall be construed in conformity with the laws and State of Maryland." ECF 65-3, p. 5, ¶ 16.  However, AmWeb never presents this argument in its Plaintiff's Response In Opposition To Defendants' Amended Partial Motion To Dismiss Third Amended Complaint [ECF No. 65].  AmWeb's arguments regarding the pending motion are based on Colorado state law and neither AmWeb nor Flom argues that Maryland law applies to the claims currently before me.  Therefore, I need not address the applicability of the Wastepaper Agreement's choice of law provision at this time.

P.3d at 74) ("[E]ven if the duty would be imposed in the absence of a contract, it is not independent of a contract that 'memorialize[s]' it"). "Where there exists a duty of care independent of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus falls outside the scope of the economic loss rule." *A.C. Excavating*, 114 P.3d at 866 (citing *Town of Alma*, 10 P.3d at 1264).

Provisions two and three of the Wastepaper Agreement provide that, "AM Web agrees to sell and FLOM agrees to buy all of AM Web's output of marketable Wastepaper . . . The price to be paid by [FLOM] for the various grades of Wastepaper generated by AM Web will be in accordance with the prevailing market conditions." ECF No. 65-3, p. 1. Pursuant to these provisions, Flom had a contractual duty to pay AmWeb for its wastepaper under prevailing market conditions, and failure to do so would constitute a breach. Part and parcel of the Flom's contractual duty to pay according to prevailing market conditions is the implied duty of good faith and fair dealing. *Goodson v. Am. Std. Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (citing *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)) ("Every contract in Colorado contains an implied duty of good faith and fair dealing"); *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (citations omitted) ("Under Colorado law, every contract contains an implied duty of good faith and fair dealing").

Flom's duty not to convert funds properly owed to AmWeb, not to defraud AmWeb, and to correctly represent the facts regarding the quality and price of wastepaper arise from the Wastepaper Agreement. Implicit in Flom's duty to pay a price according to prevailing market conditions for wastepaper is the corresponding duty

to accurately represent facts regarding the quality and price of the wastepaper in order

not to defraud AmWeb.  There is also a corresponding duty for Flom not to withhold and

therefore convert funds that are rightfully AmWeb's by paying AmWeb a price for

wastepaper that is lower than the prevailing market price.  To hold that such duties are

not implied in and do not arise from the Wastepaper Agreement would be

counterintuitive.  Further, the implied duty of good faith and fair dealing encompasses

these duties as well.

It is the source of the duty that controls this discussion, and that necessarily

mandates a fact driven analysis.  Here, it is clear that Flom had a duty to correctly

represent wastepaper quality and price in order to pay AmWeb according to prevailing

market prices, and therefore refrain from converting money that was properly owed to

AmWeb by purchasing wastepaper at a price lower than the prevailing market price.

Because the duties corresponding to AmWeb's tort claims arise from the Wastepaper

Agreement and are not independent of the Wastepaper Agreement, Colorado's ELR

bars AmWeb's claims for conversion, fraud, and negligent misrepresentation.  Thus,

Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s Third

Amended Complaint [ECF No. 62] is GRANTED to the extent that Flom seeks dismissal

of AmWeb's tort claims.

**D.  AmWeb's Constructive Trust Claim**

Constructive trusts are an equitable device that courts use to compel a party that

unfairly holds a property interest to convey that interest to the party that it justly belongs.

Stephen W. Seifert, *Constructive Trusts*, 10 Colo. Prac., Creditors' Remedies – Debtors'

Relief § 8.1 (2012).  The purpose of imposing a constructive trust is to prevent the

defendant from being unjustly enriched at the plaintiff's expense. *Id.* "The successful plaintiff in a constructive trust action wins an *in personam* order that requires the defendant, the constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary of the trust." *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986).

AmWeb requests this Court to impose a constructive trust on funds that Flom allegedly withheld from AmWeb by not paying AmWeb for purchased wastepaper according to prevailing market conditions.  Taking AmWeb's allegations as true, as I must at this stage of the proceeding, AmWeb has sufficiently pled that Flom withheld money owed to AmWeb.  It is immaterial that AmWeb seeks this Court to impose the constructive trust against parties that allegedly did not directly contribute to the withholding of money owed to AmWeb. *Yetter Well Serv., Inc. v. Cimarron Oil Co.*, 841 P.2d 1068, 1070 (Colo. App. 1992) ("It [a constructive trust] is also appropriate if innocent third persons have subsequently acquired an interest in the property").   Thus, Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s Third Amended Complaint [ECF No. 62] is DENIED to the extent that Flom seeks dismissal of AmWeb's constructive trust claim.

## CONCLUSION

After careful consideration of the matters before this Court, it is

ORDERED that Flom Corporation's Amended Partial Motion to Dismiss American Web, Inc.'s Third Amended Complaint [ECF No. 62] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that:  (1) this Court lacks personal jurisdiction over Peter Abeles; and, (2) Colorado's Economic Loss Rule bars American

Web, Inc.'s tort claims (conversion, fraud by deceit, and negligent misrepresentation).

Therefore, American Web, Inc.'s tort claims are **DISMISSED WITH PREJUDICE** and all

claims asserted against Peter Abeles are **DISMISSED WITH PREJUDICE**.  The motion

is **DENIED** in all other respects.

     Dated:  March 25, 2013.

                                                            BY THE COURT:


                                              /s/ Wiley Y. Daniel
                                              Wiley Y. Daniel
                                              Senior U.S. District Judge