IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-02444-WYD-KMT

AMERICAN WEB, INC.,

    Plaintiff,

v.

FLOM CORPORATION;
LLOYD S. STIRMER;
PETER O. ABELES; and,
JOHN DOE TRUSTEE(S) of the STIRMER TRUST,

    Defendants.

---

## ORDER

---

THIS MATTER is before the Court on American Web, Inc.'s, Motion For Partial Summary Judgment [ECF No. 75]. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On April 27, 2013, American Web, Inc. ("Am Web") filed a Third Amended Complaint [ECF No. 53] against Flom Corporation ("Flom"), Lloyd S. Stirmer, Peter O. Abeles, and the John Doe Trustees of the Stirmer Trust (collectively "the Defendants"), seeking a declaratory judgment and constructive trust, and alleging the following claims: (1) breach of contract for underpayment and nonpayment; (2) breach of duty of good faith and fair dealing; (3) conversion; (4) fraud by deceit; and, (5) negligent misrepresentation.

Am Web is a commercial printing company which, in connection with its business operations, produces wastepaper. Flom provides consulting services to wastepaper producers with regard to their recycling options. Defendant, Peter O. Abeles, is a 50% owner and Chairman of Flom's Board of Directors. Defendant, Lloyd S. Stirmer, is Flom's President. The John Doe Trustees of the Stirmer Trust own 46% of Flom.

In 1986, Abeles visited Colorado to discuss the possibility of entering into a contract with Am Web regarding wastepaper recycling. In September 2006, Am Web and Flom entered the Wastepaper Supply and Equipment Access Agreement ("the Wastepaper Agreement") [ECF No. 65-3] in which Flom agreed to purchase all of Am Web's marketable wastepaper and pay Am Web "in accordance with the prevailing market conditions." ECF No. 65-3, p.1, ¶ 3. For five years, Flom purchased wastepaper from Am Web on a monthly basis.

After selling wastepaper to Flom for five years, Am Web obtained a commercially available schedule of rates considered to be the prevailing market prices for wastepaper that are paid by consuming paper mills. Am Web alleges that according to these rates, Flom grossly under-compensated Am Web for its wastepaper purchases dating back to the beginning of the parties' business relationship. Following this discovery, Am Web ceased its wastepaper shipping operation to Flom in August 2011. At that time, Flom allegedly owed Am Web for twelve shipments made since July 1, 2011. According to Am Web, Flom should have paid Am Web for these shipments by November 5, 2011. Am Web alleges that Flom has not paid for these final twelve shipments.

On September 16, 2011, Am Web filed this lawsuit against Flom, Stirmer, Abeles, and the John Doe Trustees of the Stirmer Trust. Am Web seeks a declaratory

judgment regarding its rights and obligations under the Wastepaper Agreement and requests this Court to impose a constructive trust on the funds Flom allegedly withheld from Am Web by not paying Am Web for wastepaper in accordance with prevailing market conditions.  Am Web also alleges the following claims:  (1) breach of contract for underpayments; (2) breach of contract for nonpayment; (3) breach of duty of good faith and fair dealing; (4) conversion; (5) fraud; and, (6) negligent misrepresentation.

On May 30, 2012, Flom filed an Amended Partial Motion To Dismiss Third Amended Complaint [ECF No. 62], arguing that:  (1) Colorado's Economic Loss Rule ("ELR") bars Am Web's tort claims; and, (2) this Court lacks personal jurisdiction over Abeles.  On March 25, 2013, I issued an Order [ECF No. 95] dismissing all claims against Abeles for lack of personal jurisdiction and Am Web's tort claims against the defendants pursuant to Colorado's Economic Loss Rule ("ELR").  On April 2, 2013, Am Web filed Motion For Clarification Of Order [ECF No. 97], requesting that I clarify the effect of Colorado's ELR as it relates to Am Web's tort claims against Stirmer.

On August 31, 2012, Am Web filed a Motion For Partial Summary Judgment [ECF No. 75], arguing that it is entitled to judgment as a matter of law on its breach of contract claims because Flom breached the Wastepaper Agreement by:  (1) improperly retaining commission in connection with payments from wastepaper mills who purchased Am Web's wastepaper through Flom; and, (2) not paying Am Web for 12 shipments of wastepaper.  On Wednesday, September 11, 2013, I held a Motions Hearing and heard arguments regarding Am Web's motion [ECF No. 75] and took the matter under advisement.

# ANALYSIS

## A. Legal Standard for a Motion for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

## B. Am Web's Motion For Partial Summary Judgment [ECF No. 75]

Am Web requests: (1) a declaratory judgment regarding the parties' rights and obligations under the Wastepaper Agreement; and, (2) entry of summary judgment in its


favor regarding its breach of contract claims.

As an initial matter, I note that the Wastepaper Agreement contains a choice of law provision. The provision states that "[t]his Agreement shall be construed in conformity with the laws of the state of Maryland." ECF No. 65-3, p. 5, ¶ 16. Regarding the issues raised by Am Web in its Motion For Partial Summary Judgment [ECF No. 75], all parties agree that Maryland law applies. Thus, I will analyze Am Web's arguments under Maryland law.

### 1. Declaratory Judgment / Breach of Contract for Underpayment

Am Web requests that I declare the parties' rights and obligations under the Wastepaper Agreement as it relates to payment for wastepaper. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, I have the authority to "declare the rights and other legal relations" of the parties under the Wastepaper Agreement.[1] The Wastepaper Agreement states, in pertinent part:

> 2. AM Web agrees to sell and FLOM agrees to buy all of AM Web's output of marketable Wastepaper . . .
>
> 3. The price to be paid by Buyer [Flom] for the various grades of Wastepaper generated by AM Web will be in accordance with the prevailing market conditions. These

---

[1] Pursuant to 28 U.S.C. § 2201:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 USCS § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 USCS § 1516a(f)(10)]), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

prices will be evidenced by FLOM's monthly purchase order.

4. It is understood and agreed that Wastepaper which is the subject of this Agreement is purchased by FLOM for resale to a consuming paper mill or mills (hereinafter the "Mill") on a direct Mill shipment and consumption basis. In the event of any Mill rejections of Wastepaper purchased from AM Web, FLOM shall, in addition to any other payments or credits or debits due AM Web, have the right to debit its payments or credits to AM Web for any such Mill rejections, including freight. Such debit shall be shown in the following month's invoice. FLOM shall furnish AM Web with a monthly accounting of all credits and debits due the Parties no later than sixty (60) days subsequent to the date of the close of business for the subject month, which statement shall be certified by FLOM as being complete, correct, and accurate as of the date it bears.

5. Flom shall use reasonable efforts to obtain for AM Web the best possible price from the Mill, however, Buyer [Flom] makes no representations as to the price other than those expressly set forth herein. Wastepaper failing to conform with the agreed Specifications shall be subject to price adjustment, downgrading or rejection at the sole discretion of the Mill. All monetary adjustments assessed by the Mill shall be explained in detail to AM Web and may, if requested, be accompanied by sample of the objectionable materials taken from the Wastepaper examined. In the event of Wastepaper being rejected by the Mil, FLOM Shall have no obligation to pay AM Web but shall use reasonable efforts to advise AM Web of the rejection. Prices may increase or decrease monthly depending on market conditions beyond the control of the Parties. Nothing in this Agreement shall constitute a price guarantee from Buyer [Flom] to AM Web.

FLOM shall not be required to pay AM Web until FLOM has been paid by the Mill, or until 90 days after shipment, whichever occurs first.

ECF No. 65-3, p. 3, ¶ 3 & p. 4, ¶¶ 4-5.

Because the Wastepaper Agreement is a contract for the sale of goods, disputes regarding the agreement are governed by the Uniform Commercial Code ("UCC") as adopted by Maryland. *See Sagent Tech., Inc. v. Micros Sys.*, 276 F. Supp. 2d 464, 467

n.1 (D. Md. Aug. 5, 2003) (internal citations omitted) ("The U.C.C. applies to 'transactions in goods.' Something is a 'good' if it is 'movable at the time of identification to the contract for sale'"). Pursuant to § 1-103 of Maryland's UCC, "[u]nless displaced by the particular provisions of the Maryland Uniform Commercial Code, the principles of law and equity . . . shall supplement [the UCC's] provisions . . . " Maryland's UCC does not contain a provision specifically dictating how a contract shall be interpreted. Thus, I look to Maryland's common law. When interpreting a contract, Maryland courts apply "an objective approach to contract interpretation, according to which, unless a contract's language is ambiguous, [courts] give effect to that language as written without concern for the subjective intent of the parties at the time of formation." *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 691 (Md. 2010) (citing *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007)). This inquiry restricts courts to "the four corners of the agreement" and requires them to "ascribe to the contract's language its 'customary, ordinary, and accepted meaning.'" *Id.* (citations omitted). Thus, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* (quoting *Cochran*, 919 A.2d at 710).

Am Web's chief complaint is that Flom retained significant amounts of money as service charges or commission, $609,929 to be exact, in derogation of the Wastepaper Agreement. The Wastepaper Agreement's plain language does not provide for any service charge or commission. In fact, during the September 11, 2013, Motions Hearing, Flom admitted on record that the words "service charge" and "commission" do not appear in the Wastepaper Agreement. Using Maryland's objective approach to

- 7 -

contract interpretation as a supplement to its UCC, I am confined to the four corners of the Wastepaper Agreement because the Wastepaper Agreement is unambiguous. The Wastepaper Agreement does not contemplate a commission for Flom upon the sale of Am Web's wastepaper. Thus, under the Wastepaper Agreement's terms, Flom is not entitled to receive commission upon the sale of Am Web's wastepaper.

Though it admitted that the words "service charge" and "commission" do not appear in the Wastepaper Agreement, Flom argues that the UCC's course of performance and course of dealing provision permits it to receive commission upon the sale of Am Web's wastepaper. Pursuant to Md. COMMERCIAL LAW Code Ann. § 1-303(d), "[a] course of performance or course of dealing between the parties . . . may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." First, as this provision relates to course of performance or course of dealing giving meaning to "specific terms of the agreement," there is no "service charge" or "commission" term in the Wastepaper Agreement. Thus, there is term or terms to give "particular meaning to." Second, while parties' course of performance and course of dealing may supplement and qualify terms of an agreement, a party must at the very least have knowledge of the action and behavior that serves as the basis for the alleged course of performance or dealing.[2] In other words, a party

---

[2] Pursuant to Md. COMMERCIAL LAW Code Ann. §§ 1-303(a) and (b):

> (a) "Course of performance" defined. -- A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:
>
> (1) The agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
>
> (2) The other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

- 8 -

cannot claim that certain behavior constitutes course of performance or dealing when the other party had no knowledge of such behavior. Am Web was not aware that Flom was improperly retaining commission on wastepaper sales. Thus, Flom cannot properly assert that such behavior was a course of performance or dealing with Am Web.

While the UCC governs the Wastepaper Agreement, it cannot be used as a vehicle to rewrite the Wastepaper Agreement and create rights and obligations that did not previously exist and that the parties did not intend to exist. Therefore, I find that under the Wastepaper Agreement's terms: (1) Flom cannot rightfully retain commission from wastepaper sales; and, (2) Am Web is entitled to the money Flom illegally withheld as commission on wastepaper sales: $609,929.

### 2. Am Web's Breach of Contract Claim for Non-Payment

Am Web terminated the Wastepaper Agreement in August 2011. Am Web alleges that between July 1, 2011, and August 5, 2011, Flom received at least 12 wastepaper shiploads and has not paid Am Web for the shiploads. ECF No. 53, p. 4, ¶ 27. Flom states Am Web breached the Wastepaper Agreement in July 2011 by selling wastepaper to a company named Curbside. Flom states that to offset its damages for such breach, it withheld payment on eight wastepaper shipments from July 14, 2011, to August 5, 2011. ECF No. 77, p. 10, ¶ 16.

Am Web denies that it breached the Wastepaper Agreement. Am Web states that it only sent "test" shipments to Curbside so Curbside could determine the wastepaper's grade and determine its price. ECF No. 76, p. 6, ¶ 30. However, Flom

---

> (b) "Course of dealing" defined. -- A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

produced numerous receipts from Curbside which allegedly show that Am Web sold some of its wastepaper to Curbside. ECF No. 72-12, pp. 4-20. These receipts total over $64,000. If Am Web breached the Wastepaper Agreement, then Flom may have been justified in withholding payment for certain wastepaper shipments.

There are genuine issues of material fact as to whether: (1) Am Web breached the Wastepaper Agreement by selling wastepaper to a company other than Flom *i.e.*, Curbside; and, (2) Flom was justified in withholding payment for certain wastepaper shipments because of Am Web's alleged breach. Thus, Am Web is not entitled to judgment as a matter of law on its breach of contract claim for nonpayment. Accordingly, Am Web's Motion For Partial Summary Judgment [ECF No. 75] is DENIED to the extent Am Web seeks partial summary judgment on its breach of contract claim for nonpayment.

## CONCLUSION

After careful consideration of the matters before this Court, it is

ORDERED that Am Web's Motion For Partial Summary Judgment [ECF No. 75] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that Am Web seeks partial summary judgment on its breach of contract for underpayment claim. **As such, Am Web is entitled to, and Flom shall pay Am Web, the entire amount of money withheld as commission: $609,929**. The motion is **DENIED** to the extent that Am Web seeks partial summary judgment on its breach of contract claim for nonpayment. It is

FURTHER ORDERED that my in-court rulings during the September 11, 2013, Motions Hearing are incorporated in this Order. Accordingly, it is

- 11 -

FURTHER ORDERED that Am Web's Motion To Clarify [ECF No. 97] is **GRANTED** to the extent that Am Web seeks clarification of my March 25, 2013, Order [ECF No. 95].  To clarify, Colorado's Economic Loss Rule bars Am Web's tort claims, including those asserted against Lloyd S. Stirmer.  It is

FURTHER ORDERED that Flom's Motion For Partial Summary Judgment [ECF No. 74] is **DENIED**.

Dated:  September 12, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U.S. District Judge